UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **SCOTT CAYLER,**<br><br>*Plaintiff,*<br><br>v.<br><br>**TRANSUNION RENTAL SCREENING SOLUTIONS, INC.,**<br><br>*Defendant.* | Case Number:  8:23-cv-1170 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Scott Cayler ("Mr. Cayler"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, TransUnion Rental Screening Solutions, Inc. ("TransUnion"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Cayler against TransUnion for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. TransUnion is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k) and § 48.193, Fla. Stat.

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and / or caused by TransUnion within Pasco County, Florida, which is in the Middle District of Florida.

## PARTIES

### Mr. Cayler

5. Mr. Cayler is a natural person residing in Wesley Chapel, Pasco County, Florida.

6. Mr. Cayler is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### TransUnion

7. TransUnion is a Delaware corporation with a principal business address of 6430 South Fiddlers Green Circle, Suite 500, Greenwood Village, CO 80111.

8. TransUnion's Delaware Registered Agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

9. TransUnion is a nationwide *Consumer Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in

the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail, internet, and/or telephone communications.

**FACTUAL ALLEGATIONS**

10. In or around March 2023, Mr. Cayler began looking for a home to rent in Pasco County after his wife, Susan Cayler, accepted a job offer in Florida.

11. Mr. Cayler travelled from his home in Iowa to Florida to look at potential homes to rent.

12. After finding a suitable home to rent in Wesley Chapel, Florida, Mr. Cayler and his wife submitted a rental application to Evernest LLC ("Evernest"), a property management company.

13. Mr. Cayler and his wife each paid a required application fee to Evernest.

14. On or about April 4, 2023, as part of the application process, Evernest requested a consumer report, also known as a credit report, regarding Mr. Cayler (the "Report") from TransUnion.

15. In its Report on Mr. Cayler, TransUnion stated Mr. Cayler had a criminal record that included two convictions for felony sexual contact with a child.

16. TransUnion reported criminal convictions for "Indecency with a Child Sexual Contact" and "Indecency with a Child by Contact." **SEE PLAINTIFF'S EXHIBIT A.**

17. TransUnion thus claimed in its Report about Mr. Cayler that he was a convicted child sex offender.

18. Mr. Cayler has no criminal history (either arrest or conviction) involving crimes related to any contact, much less any sexual contact, with children. *Id.*

19. Mr. Cayler is categorically **not** a child sex offender. *Id.*

20. No public record concerning the arrest or conviction of anyone matching Mr. Cayler's name, address, and date of birth concerning sexual crimes against children exists.

21. TransUnion had no reason to believe Mr. Cayler had any kind of criminal history concerning indecency against children.

22. TransUnion utilizes heavily-flawed algorithms that attempt to match public record data with consumers on whom TransUnion maintains files.

23. TransUnion is aware these automated systems frequently associate criminal records with the wrong consumer credit file and match criminal records based on little more than a similar name.

24. TransUnion employs no special procedures for handling possible matches concerning particularly heinous crimes like child sex offenses.

25. TransUnion's automated systems are programmed to report criminal data even if its systems are not certain they concern the target consumer, so long as its systems are "sure enough" it has found the right consumer.

26. TransUnion's false reporting of non-existent child sex offenses resulted from reckless and unreasonable methods matching public record data with limited personally-identifying information to consumer credit files it maintains.

27. TransUnion calls its rental application screening service "SmartMove."

28. TransUnion touts to its prospective landlord customers that it "provides a comprehensive tenant background check so that you get the whole story, including any criminal report that an applicant may have. With more detailed criminal reports, online in minutes from SmartMove's credit and criminal background check service, you'll make better leasing decisions and find renters for your property that are acceptable to you. . . SmartMove's criminal reports and

background checks are quick and efficient, getting you the results you need in a hurry...." TransUnion Rental Screening Solutions, Inc., https://www.mysmartmove.com/SmartMove/tenant-background-report.page (last visited May 23, 2023); **SEE PLAINTIFF'S EXHIBIT B.**

29. TransUnion's attempt to provide information "in minutes" resulted in TransUnion providing outrageous, unverifiable, and erroneous information about Mr. Cayler to Evernest.

30. In an aggressive attempt to match every public record harvested from its sources, TransUnion's automated system often erroneously matches information to a consumer's file with minimal commonalities.

31. These erroneous matches can occur even when the data from TransUnion's vendors who supply it with public record data contains substantially different identifying information from that of the actual consumer.

32. TransUnion knows that its automated systems erroneously matches information to incorrect consumers' files with minimal commonalities.

33. Trans Union has had multiple lawsuits filed against it for this very issue; likewise, Trans Union's parent company, Trans Union LLC, has been sued for myriad issues regarding the same problems, including many suits for falsely matching innocent, United States citizens with names on the Specially Designated National list maintained by the Office of Foreign Assets Control. See, e.g., *Mike*

*Rodriguez vs. Trans Union LLC*, M.D. Fla., July 21, 2020, case 8:20-cv-01010-VMC-TGW (Trans Union conflating plaintiff Mike Rodriguez, an employee serving the U.S. government, with Luis Rodrguez Olivea, a person wanted by the United States Drug Enforcement Agency).

34. Despite such knowledge, TransUnion has declined to correct its systems.

35. TransUnion, as a CRA, has a legal obligation to use reasonable procedures to assure the maximum possible accuracy of its consumer reports. 15 U.S.C. § 1681e(b).

36. As evidenced by the glaring errors in its Report, TransUnion failed to use reasonable procedures in producing the Report regarding Mr. Cayler that it sold to Evernest, as any reasonable procedure would have determined that information about an unrelated individual's criminal history was mixed with Mr. Cayler's data.

37. Instead of ensuring the accuracy of the vile, heinous acts that TransUnion included in its Report about Mr. Cayler, TransUnion simply disclosed them, unsubstantiated, to a third-party.

38. That third-party, Evernest, received, processed, and acted upon the inaccurate report.

39. On April 11, 2023, Mr. Cayler and his wife were informed that their rental application was declined due to Mr. Cayler's criminal convictions. **SEE PLAINTIFF'S EXHIBIT C.**

40. Evernest advised the denial was solely due to TransUnion's report claiming Mr. Cayler has a history of criminal contact with children.

41. Mr. Cayler attempted to obtain the Report from Evernest, but they would not provide it to him. **SEE PLAINTIFF'S EXHIBIT D.**

42. However, in its response to Mr. Cayler's request, Evernest confirmed the application denial was due to "Criminal Record." *Id.*

43. Mr. Cayler explained to Evernest the criminal history furnished by TransUnion was patently false, but Evernest responded that it could not approve him for a rental due to the Report.

44. Evernest referred Mr. Cayler back to TransUnion.

45. Evernest did not return the application fee. **SEE PLAINTIFF'S EXHIBIT C.**

46. Mr. Cayler became very upset and concerned for multiple reasons.

47. Mr. Cayler was falsely accused of some of the worst possible crimes in society, and he was concerned that TransUnion's erroneous reports on him would keep him from securing rental housing with other landlords, thereby

jeopardizing his and his wife's planned move to Pasco County and, in turn, his wife's new job.

48. On April 11, 2023, Mr. Cayler submitted a dispute to TransUnion indicating that the information regarding his purported criminal history was incorrect.

49. Not knowing how long it would take for TransUnion to investigate the dispute and not wanting to rely solely on a company that falsely imputed him with heinous criminal behavior, Mr. Cayler began the process of trying to clear his name of the false criminal history.

50. Mr. Cayler expended significant time and money obtaining documentation showing he had no such criminal history.

51. Mr. Cayler contacted the Federal Bureau of Investigation ("FBI"), and had his fingerprints taken at his expense, so that he could obtain documentation from the FBI to show he had no child sex offense history.

52. Mr. Cayler contacted the owner of the home directly and explained his situation to the owner.

53. The owner eventually agreed to rent the home to Mr. Cayler and his wife—predicated on Mr. Cayler paying six months' worth of rent in advance, which was at least $18,000.

54. Mr. Cayler ended up paying the $18,000, up-front payment, in order to secure housing in Pasco County.

55. Had TransUnion's Report been accurate, Mr. Cayler would not have had to pay six months in advance.

56. As a result of this, Mr. Cayler lost interest income and use of the money for other purposes.

57. Mr. Cayler was placed under additional stress because, if he could not prove that the Report was incorrect by the end of the six months, he and his wife would have to move out of the home.

58. On April 21, 2023, TransUnion advised Mr. Cayler that the results of Trans Union's investigation determined the sex offender criminal history concerning him *could not be* verified and had been deleted from his credit file maintained by TransUnion. **SEE PLAINTIFF'S EXHIBIT A.**

59. Thus, pursuant to Trans Union's own written statements, the data it initially sold in its Report to Mr. Cayler's prospective landlord could not be verified as relating to him.

60. As a result of TransUnion's erroneous Report, Mr. Cayler was forced to pay six months of rent in advance in order to secure housing for himself and his wife.

61. As a result of TransUnion's conduct, Mr. Cayler has suffered damage to his reputation.

62. As a result of TransUnion's conduct, Mr. Cayler has suffered severe emotional distress, stress, anguish, embarrassment, and frustration.

63. As a result of TransUnion's conduct, Mr. Cayler has spent time and money in obtaining criminal history reports to clear his name and in procuring counsel.

64. Mr. Cayler has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to the firm.

## COUNT I
## VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(b)

65. Mr. Cayler adopts and incorporates paragraphs 1 – 64 as if fully stated herein.

66. TransUnion violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer report it sold regarding Mr. Cayler, as reasonable procedures would not have resulted in TransUnion's inclusion of information concerning another individual's criminal history in the Report about Mr. Cayler.

67. TransUnion's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to provide consumer reports with maximum possible accuracy.

68. TransUnion's policies could reasonably be foreseen to cause harm to Mr. Cayler.

69. TransUnion is thus liable to Mr. Cayler, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Cayler's actual damages or statutory damages of up to $1,000 for each occurrence, as well as for punitive damages, reasonable attorneys' fees, and costs.

70. Alternatively, TransUnion acted negligently and is thus liable to Mr. Cayler, pursuant to 15 U.S.C. § 1681o, for Mr. Cayler's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Mr. Cayler respectfully requests this Honorable Court enter judgment against TransUnion for:

a. The greater of Mr. Cayler's actual damages or statutory damages of $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Cayler's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2);

  c.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2); and,

  d.  Such other relief that this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Mr. Cayler hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **May 26, 2023**, by:

                 **SERAPH LEGAL, P. A.**

                 */s/ Carolyne Moomaw*
                 Carolyne Moomaw, Esq.
                 Florida Bar No.: 21889
                 CMoomaw@SeraphLegal.com
                 Thomas M. Bonan Esq.
                 Florida Bar No.: 118103
                 TBonan@SeraphLegal.com
                 1614 North 19th Street
                 Tampa, FL 33605
                 Tel: 813-567-1230
                 Fax: 855-500-0705
                 *Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A    TransUnion's Dispute Resolution for Mr. Cayler, April 21, 2023 – Excerpt
B    TransUnion's Website, May 23, 2023 - Excerpt
C    Evernest Rejection Correspondence, April 11, 2023 – Excerpt
D    Evernest Correspondence, April 21, 2023 – Excerpt